CRULL, APPELLANT, *v.* MAPLE PARK BODY SHOP ET AL., APPELLEES.

(No. CA86-08-125—Decided March 2, 1987.)

*R. L. Burdge & Associates* and *Ronald L. Burdge,* for appellant.

*Charles P. Terhune, Jr.,* for appellees.

*Per Curiam.* This cause came on to be heard upon an appeal from the Middletown Municipal Court of Butler County.

In July 1984, plaintiff-appellant, Jack Crull, contracted with defendants-appellees, Maple Park Body Shop and its owners, Ken Brewer and George Alan Sorrell, to have his 1971 Mustang painted so that he could drive it and enter it in an occasional show. On July 3, 1984, appellant was given a written estimate of $1,348.20. In late July, appellant took the car to appellees' shop. Two or three weeks later, appellees discovered that the car had been damaged by hail, and notified appellant that additional work would be necessary. Appellant agreed to pay the additional cost, and the work proceeded.

Appellant later testified that he wanted to have the car returned to him in time to enter a show on September

1, but that having the car painted correctly was more important to him than having it done quickly. Nevertheless, the work was not finished until October 25, 1984, when appellant paid $1,762.95 to appellees and, apparently satisfied with the work, took the car home.

Later, dissatisfied with the quality of the work, appellant filed a complaint in the Middletown Municipal Court. Appellant's first claim alleged breach of contract and warranties, and his second, third and fourth claims alleged violations of the Ohio Consumer Sales Practices Act.

Appellees' motion for partial summary judgment on the second, third and fourth claims was granted, and the case went to trial on the breach of contract claim alone. The trial court, finding that appellant had failed to prove by a preponderance of the evidence that appellees had breached the contract, dismissed appellant's complaint with prejudice.

Appellant timely filed the instant appeal, naming the following two assignments of error:

Assignment of Error No. 1:

"The trial court's judgment in favor of defendants on the breach of contract claim was error and against the weight of the evidence."

Assignment of Error No. 2:

"The trial court erred as a matter of law by granting defendants' motion for summary judgment."

In support of his first assignment of error, appellant argues that the evidence clearly showed that appellees agreed to do the work in a "show quality" as opposed to a "street quality" manner.

The trial court found that the parties agreed that appellees were to perform a "street quality" job, and that appellees did not breach that agreement. After a review of the record, we cannot say that the trial court's judg-

ment was unsupported by the evidence.

The credibility of witnesses and resolutions of conflicts in evidence are matters for the trier of facts. *G. F. Business Equip., Inc.* v. *Liston* (1982), 7 Ohio App. 3d 223, 225-226, 7 OBR 285, 287-288, 454 N.E. 2d 1358, 1361. On appeal, the trial court's resolution of fact will not be disturbed unless clearly contrary to the manifest weight of the evidence. See *C. E. Morris Co.* v. *Foley Constr. Co.* (1978), 54 Ohio St. 2d 279, 8 O.O. 3d 261, 376 N.E. 2d 578. If the judgment of the lower court is supported by some competent, credible evidence going to all the essential elements of the case, it will not be reversed by a reviewing court as being against the weight of the evidence. *Seasons Coal Co.* v. *Cleveland* (1984), 10 Ohio St. 3d 77, 10 OBR 408, 461 N.E. 2d 1273; *C. E. Morris Co., supra.*

Since there is competent, credible evidence in the record that the parties agreed to a "street quality" job, we find appellant's argument to be without merit. First, appellant's expert witness testified that a "show quality" job would have cost appellant $3,000 to $3,500. Additionally, appellee George Alan Sorrell testified that had he been employed to perform "show quality" work, the price would have been at least twice as much as he had charged. Thus, it is reasonable to infer therefrom that the parties had agreed that the painting was to be of "street quality."

The trial court's decision that there was not a breach of contract is also supported by the weight of the evidence. Appellant's own expert witness testified that the paint job was probably initially a show quality job which had deteriorated into a street quality job by the time he had inspected the car. Further, the evidence showed that the car was worth $5,000 after the paint job. Thus, it is apparent

that appellant received the bargained-for service.

Appellant also argues that the contract was not completed by an agreed-to date. However, appellant's own testimony was that he was concerned that the work be done correctly, rather than quickly.

Accordingly, appellant's first assignment of error is overruled.

In support of his second assignment of error, appellant contends that a genuine issue of material fact existed as to whether appellees violated the Ohio Consumer Sales Practices Act, R.C. 1345.01 *et seq.*

A motion for summary judgment will be granted when it is determined that (1) no genuine issue as to any material fact remains to be litigated; (2) the party moving for summary judgment is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. *Temple* v. *Wean United, Inc.* (1977), 50 Ohio St. 2d 317, 327, 4 O.O. 3d 466, 472, 364 N.E. 2d 267, 274; Civ. R. 56(C).

If the adverse party does not set forth specific facts showing that there is a genuine issue for trial, summary judgment shall be entered against him. Unsupported allegations in the pleadings are not sufficient to require the denial of summary judgment. *Harless* v. *Willis Day Warehousing Co.* (1978), 54 Ohio St. 2d 64, 65-66, 8 O.O. 3d 73, 74, 375 N.E. 2d 46, 47; Civ. R. 56(E).

Appellant's second claim alleged that appellees committed "an unfair or deceptive act or practice" in violation of R.C. 1345.01 *et seq.,* by breaching their contract with appellant. However, since we have already determined that there was no breach, this argument is deemed moot.

The second claim also alleged that appellees committed an unfair and deceptive act by failing to register their fictitious name with the Secretary of State, as required by R.C. 1329.01(C). We recognize that in some circumstances the failure to register a fictitious name may be a relevant factor in the determination whether a supplier has committed an unfair or deceptive act. See, *e.g., Brown* v. *Lyons* (1974), 43 Ohio Misc. 14, 72 O.O. 2d 216, 332 N.E. 2d 380. However, we feel that the mere failure to register a fictitious name is not an "unfair or deceptive act" for which appellant can obtain relief under the Consumer Sales Practices Act. Nor do we feel that appellant is entitled to relief under R.C. 1329.10. R.C. 1329.10 provides the remedies and consequences for failure to register a fictitious name:

"(A) The attorney general, upon the request of the secretary of state, shall bring an action for an injunction against any person who violates section 1329.01 or 1329.07 of the Revised Code, and who, after proper notification by the secretary of state, refuses or fails to comply with such section.

"(B) No person doing business under a trade name or fictitious name shall commence or maintain an action in the trade name or fictitious name in any court in this state or on account of any contracts made or transactions had in the trade name or fictitious name until it has first complied with section 1329.01 of the Revised Code and, if the person is a partnership, it has complied with section 1777.02 of the Revised Code, but upon compliance, such an action may be commenced or maintained on any contracts and transactions entered into prior to compliance.

"(C) An action may be commenced or maintained against the user

of a trade name or fictitious name whether or not the name has been registered or reported in compliance with section 1329.01 of the Revised Code."

Thus, there appears to be no private right of action available for violation of R.C. 1329.01. It is a basic doctrine of statutory construction that when the legislature has authorized an action to be instituted by a particular person or office, the suit may not be instituted by another. *Cuyahoga Cty. Funeral Directors Assn.* v. *Sunset Mortuary, Inc.* (App. 1962), 88 Ohio Law Abs. 568, 575, 181 N.E. 2d 309, 313.

Appellant's third and fourth claims alleged that appellees failed to provide a written estimate and to post a sign in compliance with the rules promulgated under R.C. 1345.01 *et seq.*

Ohio Adm. Code 109:4-3-13 provides in relevant part:

"(A)  It shall be a deceptive act or practice in connection with a consumer transaction involving the performance of either repairs or any service upon a motor vehicle where the anticipated cost exceeds twenty-five dollars and there has been face to face contact at the supplier's place of business during the hours such repairs or services are offered, between the consumer or his representative and the supplier or his representative, prior to the commencement of the repair or service for a supplier to:

"(1)  Fail, at the time of the initial face to face contact and prior to the commencement of any repair or service, to provide the consumer with a form which indicates the date, the identity of the supplier, the consumer's name and telephone number, the reasonably anticipated completion date and, if requested by the consumer, the anticipated cost of the repair or service. The form shall also clearly and conspicuously contain the following

disclosures in substantially the following language:

" 'ESTIMATE

" [']YOU HAVE THE RIGHT TO AN ESTIMATE IF THE EXPECTED COST OF REPAIRS OR SERVICES WILL BE MORE THAN TWENTY-FIVE DOLLARS. INITIAL YOUR CHOICE:

_____ written estimate

_____ oral estimate

_____ no estimate'

" [']( 2)  Fail to post a sign in a conspicuous place within that area of the supplier's place of business to which customers requesting any repair or service are directed by the supplier or to give the consumer a separate form at the time of the initial face to face contact and prior to the commencement of any repair or service which clearly and conspicuously contains the following language:

" 'NOTICE

" [']IF THE EXPECTED COST OF A REPAIR OR SERVICE IS MORE THAN TWENTY-FIVE DOLLARS, YOU HAVE THE RIGHT TO RECEIVE A WRITTEN ESTIMATE, ORAL ESTIMATE, OR YOU CAN CHOOSE TO RECEIVE NO ESTIMATE BEFORE WE BEGIN WORK. YOUR BILL WILL NOT BE HIGHER THAN THE ESTIMATE BY MORE THAN TEN PER CENT UNLESS YOU APPROVE A LARGER AMOUNT BEFORE REPAIRS ARE FINISHED. OHIO LAW REQUIRES US TO GIVE YOU A FORM SO THAT YOU CAN CHOOSE EITHER A WRITTEN, ORAL, OR NO ESTIMATE.' "

However, Ohio Adm. Code 109:4-3-13(F) provides:

"In lieu of complying with the requirements of paragraphs (A)(1) * * * of this rule, a supplier may provide a consumer, prior to the commencement of any repair or service, with a written

quotation or the price at which the repair or service will be performed, which shall indicate that the quotation shall be binding upon the supplier for a period of five days, provided that the subject of the consumer transaction is made available to the supplier for the repair or service within that period."

The affidavit of George Alan Sorrell, submitted in support of appellees' motion for summary judgment, stated that he provided appellant with a written estimate on July 3, 1984. A copy of the estimate was provided.

The affidavit also stated that upon discovery of additional damage to the vehicle, an additional written estimate was provided to appellant, who approved the additional cost.

We agree with appellant that the written estimate provided by appellees did not comply with the strict requirements of Ohio Adm. Code 109:4-3-13(A)(1). However, we do feel that appellees are exempted from compliance with Ohio Adm. Code 109:4-3-13(A)(1) by Ohio Adm. Code 109:4-3-13(F). Appellees' affidavits, and the documents referred to therein, show that the estimate given by appellees states, "[t]his estimate is for immediate acceptance" and is thus contrary to the requirement of Ohio Adm. Code 109:4-3-13(F) that the written quotation state that it is binding for five days. However, where, as here, the record shows that the price ultimately charged did not exceed the original estimate, and that appellant did not deliver the car to appellees within five days of the estimate, it is not a deceptive act or practice for the written estimate to fail to state that the quotation is binding on the supplier for a period of five days. After all, appellees apparently treated the estimate as binding for several months.

Appellees failed to assert in support of their motion that they had posted the sign required by Ohio Adm.

Code 109:4-3-13(A)(2). Therefore, we will presume that the sign was not posted. However, under the circumstances, we fail to see that the failure to post the required sign constituted a deceptive act or practice. Sorrell's affidavit stated, *inter alia*:

"2. I provided Plaintiff with a written estimate of the cost of repairing and repainting his automobile on July 3, 1984. Exhibit A.

"3. The estimate on July 3, 1984 provided for a labor rate of $16.00 per hour, our normal rate.

"4. $16.00 per hour is an average-to-low rate for Middletown body shops (Examples: Howe Motor Co. and Heber Jones = $18.00 per hour, Neal's Body Shop = $20.00 per hour).

"5. Subsequent to the above written estimate and after having started work on Plaintiff's automobile, additional damages were discovered.

"6. Plaintiff came to our body shop and he was shown what additional work was suggested on his automobile. He agreed that the additional work should be done and authorized us to proceed.

"7. We agreed to charge him only $10.00 per hour for the additional work.

"8. Plaintiff paid for 107.25 hours labor on his automobile.

"9. The actual total time worked on the Plaintiff's automobile was 179.1 hours.

"10. We charged the Plaintiff $214.58 for materials, but our actual dealer costs were $265.14.

"11. The average cost per hour paid by the Plaintiff for labor is $13.65 (107.25 hours [divided by] $1,464.42 = $13.65).

"12. The total actual hours of labor of 179.1, multiplied by the $13.65 hourly charge for labor, equals $2,444.72 for what his actual labor should have cost.

"13. Plaintiff paid us $1,762.95,

but including parts, labor and taxes, he received body work and a paint job valued at $2,845.3[5] ($2,444.72 labor + $265.1[4] parts + $135.49 taxes = $2,845.3[5]).

"14. Myself, my partner and our employees put extra labor and materials into the repair and repainting of Plaintiff's automobile because we knew that he was hard to please.

"15. On October 25, 1984, after examining his automobile, Plaintiff left our shop, apparently happy with the work we had performed.

"16. Plaintiff returned about six days after picking up his automobile and requested that a door be adjusted. This was done on-the-spot and at no charge."

Appellant, in effect, rested on his pleadings, stating in his opposing affidavit merely "[t]hat Kenneth Brewer and George Alan Sorrell and Maple Park Body Shop did each and every one committed an unfair or deceptive act or practice in each of their respective dealings with me."

Ohio Adm. Code 109:4-3-13(E) states: "* * * Where a supplier gives written estimates to consumers prior to the commencement of any repair or service regardless of the anticipated cost of repairs or services, * * * the sign or form required by paragraph (A)(2) of this rule may be modified to disclose that fact."

Ohio Adm. Code 109:4-3-01(A) provides for a liberal construction of the rules to promote their purposes and policies which includes the protection of consumers from suppliers who commit deceptive acts or practices. An act is deceptive if it " 'has the likelihood of inducing a state of mind in the consumer that is not in accord with the facts.' " *Thompson* v. *Jim Dixon Lincoln Mercury, Inc.* (Apr. 27, 1983), Butler App. No. CA82-11-0109, unreported, at 3, citing *Brown* v. *Bredenbeck* (C.P. 1975), 2 O.O. 3d 286, 287.

Under the facts as presented by Sorrell's affidavit, we are unable to conclude that the failure to post the sign was likely to "induce a state of mind in [appellant] that is not in accord with the facts."

Appellees provided appellant with a written estimate and appellant approved an amount larger than the original estimate before the repairs were finished. Thus, all the information required to be included in the sign was actually complied with. Therefore, we fail to see that appellant could have been deceived by the omission of the sign.

Even when the evidence is construed most strongly in favor of appellant, no genuine issue as to any material fact remains to be litigated, and because appellees are entitled to judgment as a matter of law, appellant's second assignment of error is overruled.

The assignments of error properly before this court having been ruled upon as heretofore set forth, it is the order of this court that the judgment or final order herein appealed from be, and the same hereby is, affirmed.

*Judgment affirmed.*

JONES and HENDRICKSON, JJ., concur.

KOEHLER, P.J., concurs in part and dissents in part.

KOEHLER, P.J., concurring in part and dissenting in part. I concur with the majority in its finding that there was no breach of contract in this cause. I differ with the majority in its holding that substantial compliance with the Consumer Sales Practices Act was intended by the legislature; therefore, I dissent as to the majority's holding on the second assignment of error.