**MOTZER DODGE JEEP EAGLE, INC., Appellant and Cross–Appellee,**

**v.**

**OHIO ATTORNEY GENERAL, Appellee and Cross–Appellant.**

[Cite as *Motzer Dodge Jeep Eagle, Inc. v. Ohio Atty. Gen.* (1994), 95 Ohio App.3d 183.]

Court of Appeals of Ohio,
Butler County.

Nos. CA93–08–162, CA93–09–193.

Decided June 6, 1994.

*Baden & Jones Co., L.P.A., David H. Landis* and *Jonathon O. Nerenberg,* for appellant and cross-appellee.

*Lee Fisher,* Attorney General, *Mary Patrick Latham* and *Sharon Zealey,* Assistant Attorneys General, for appellee and cross-appellant.

---

WILLIAM W. YOUNG, Judge.

Plaintiff-appellant and cross-appellee, Motzer Dodge Jeep Eagle, Inc., appeals an order of the Butler County Court of Common Pleas granting the motions for partial summary judgment of defendant-appellee and cross-appellant, the Ohio Attorney General.

Appellant is a motor vehicle dealership selling new and used vehicles in Hamilton, Ohio. Several years ago, appellee's Consumer Protection Section commenced an investigation of appellant's sales and advertising practices. The investigation was not commenced pursuant to complaints from appellant's customers. On September 16, 1988, appellant initiated this lawsuit by filing a complaint for a declaratory judgment in the trial court. Appellee answered and filed a counterclaim on October 18, 1988, charging appellant with numerous violations of the Ohio's Consumer Sales Practices Act, R.C. 1345.01 *et seq.* (the "Act"). The charged violations included appellant's practice of charging customers a $95 delivery and handling fee, appellant's failure to include beginning and ending dates in its advertisements, its failure to provide a written disclosure of a vehicle's use as a demonstrator, and its failure to make vehicles available to customers at the advertised price.

On August 10, 1989, appellant filed a motion for summary judgment on its declaratory judgment claim. On September 11, 1989, appellee responded with a cross-motion for summary judgment regarding appellant's failure to include dates in its advertisements. On April 17, 1990, the trial court denied appellant's motion, granted appellee partial summary judgment, and issued injunctive orders against appellant. On May 3, 1991, appellee filed a second motion for partial summary judgment regarding appellant's failure to (1) provide a written disclosure of a vehicle's use as a demonstrator (count eight of appellee's counterclaim), and (2) make vehicles available to customers at the advertised price (count nine of appellee's counterclaim). On June 19, 1991, the trial court granted appellee's motion on count eight but denied it on count nine. The court also awarded $200 statutory damages to each of the five customers who had purchased demonstrators. The court subsequently eliminated the damage award in an amended decision filed on May 28, 1992.

The case proceeded to bench trial on July 8, 1991 on the issues of whether appellant committed an unfair and deceptive practice by charging the delivery and handling fee and whether appellant, in twenty-four transactions, failed to make vehicles available to customers at the advertised price. The trial court found appellant liable on both issues by judgment entry filed on July 23, 1992. The court further held that only the customers who paid more than the advertised price were entitled to damages. A referee was appointed to determine which customers would receive damages and the amount of damages. On August 24, 1993, the trial court filed its final judgment entry in which it adopted the referee's report and the parties' stipulations regarding damages. The final judgment entry incorporated all the previous judgment entries and orders by reference.

Appellant timely filed this appeal, asserting four assignments of error. Appellee cross-appealed, asserting three assignments of error. Appellant's second assignment of error and appellee's second cross-assignment of error both deal with the same issue, and therefore will be discussed together. Appellant's third assignment of error and appellee's first cross-assignment of error will be similarly discussed together. Each of the other assigned errors will be discussed separately.

■ In its first assignment of error, appellant argues that the trial court erred in granting appellee partial summary judgment on count eight of appellee's counterclaim. Under that count, appellant was charged with violating R.C. 1345.02(A) and Ohio Adm.Code 109:4–3–08(D) by failing to provide five customers with a written disclosure of a vehicle's use as a demonstrator. Appellant argues that it fully complied with the rule by (1) writing the odometer reading on the purchase contracts, and (2) orally informing the customers that the vehicle they purchased had been used as demonstrators via appellant's salespersons.

Ohio Adm.Code 109:4–3–08(D) provides:

"It shall be a deceptive act or practice in connection with a consumer transaction for a supplier of motor vehicles who has legally operated a motor vehicle as a demonstrator, without titling it to the supplier's name, to sell the motor vehicle unless prior, clear and conspicuous disclosure is made *in writing* to the consumer or prospective consumer that the motor vehicle has been operated as a demonstrator." (Emphasis added.)

The language of Ohio Adm.Code 109:4–3–08(D) requires no construction. It clearly requires a motor vehicle supplier to provide customers with a disclosure in writing of a vehicle's use as a demonstrator. In the case at bar, although each of the five customers was orally informed, they were never provided with the

required written disclosure. The trial court therefore properly granted appellee partial summary judgment and appellant's first assignment of error is overruled.

In its second assignment of error, appellant argues that the trial court erred in awarding damages on count nine of appellee's counterclaim. Under that count, appellant was charged with violating R.C. 1345.02(A) and Ohio Adm.Code 109:4–3–16(B), the latter providing:

"It shall be a deceptive and unfair act or practice for a dealer, in connection with the advertisement or sale of a motor vehicle, to:

" * * *

"(5) advertise any motor vehicle for sale at a specific price or on specific terms and subsequently fail to show and make available for sale said vehicle as advertised."

The trial court found that appellant had violated Ohio Adm.Code 109:4–3–16(B)(5) by selling some vehicles at a price higher than their advertised price and awarded damages to the customers who had paid more than the advertised price for their cars.

Appellant first argues that the trial court failed to consider the fact that, in several of the transactions that also involved trade-ins, appellant paid more for the customers' trade-in vehicles than their actual worth. We disagree. The trial court found that "[t]he evidence [did] not justify the increased price as resulting from purchase of additional equipment or accessories or by good-faith payoff of negative equity." The record shows that the trial court did consider appellant's practice of overpaying for its customers' trade-in vehicles.

Appellant next argues that the intent behind Ohio Adm.Code 109:4–3–16(B) is to prevent dealers from engaging in a form of bait advertising in which they advertise a car at a low price, draw the customer into the dealership, and then attempt to sell the vehicle at a higher price than the advertised one. Appellant contends that since the customers did not know about or rely upon the advertisements, they did not suffer damages when they paid more than the advertised price because they had not been baited into doing so. We disagree. The language of Ohio Adm.Code 109:4–3–16(B)(5) is clear, unambiguous and requires no interpretation. It clearly requires a dealer to show and make available for sale its vehicles as advertised, regardless of whether the customers saw, knew about or relied upon the advertisements. In addition, at least one Ohio case dealing with the same argument specifically found that reliance was not required to assess actual damages. *State ex rel. Celebrezze v. Lewis Auto Sales* (Feb. 14, 1983), Montgomery C.P. No. 82–2039, unreported.

Appellant finally argues that the trial court erred in requiring appellant to honor its advertised price for ninety days. Appellant contends that transactions must occur within a reasonable time after the advertisement has been published, and that at most, a seven-day period constitutes such a reasonable time.

Similarly, in its second cross-assignment of error, appellee argues that the trial court erred in deciding that an advertised price expires after ninety days. Appellee contends that when an advertisement does not specify an ending date, the advertised price continues indefinitely. We find both contentions unsupportable.

■ In its April 17, 1990 judgment entry granting appellee partial summary judgment, the trial court held that appellant violated R.C. 1345.02 and Ohio Adm.Code 109:4–3–16(B)(26) by failing to include beginning and ending dates in its sales advertisements. The record supports the trial court's holding. The court subsequently determined in its December 15, 1992 order establishing damages that "[f]or the purpose of determining damages [for violating Ohio Adm.Code 109:4–3–16(B)(26) ], where the advertisement fails to include a termination date for the offered price, the offer shall continue in effect for ninety days after the publication of the last advertisement for that vehicle * * *." The court found the ninety-day period to be a reasonable time.

The record shows that while all the advertised vehicles were described by their make, model and main option features, some vehicles were also advertised under a stock or unit number. Because of the foregoing distinction between advertised vehicles, we find that the trial court's ninety-day period cannot always apply. We therefore hold that, with regard to vehicles advertised with a stock or unit number, the advertised offer of such a specific vehicle shall continue in effect until the advertised vehicle is sold. With regard to the other vehicles, we find the trial court's ninety-day period to be a reasonable time and accordingly uphold it. In light of the foregoing rule, we find that the issue of awarding damages to the customers who paid a price higher than the advertised price must be remanded to the trial court for it to determine whether vehicles advertised under a stock or unit number were sold at a price higher than their advertised price. To such extent, appellant's second assignment of error is sustained. Appellee's second cross-assignment of error is overruled.

In its third assignment of error, appellant argues that the trial court erred in finding that appellant's practice of charging a $95 delivery and handling fee constituted an unfair or deceptive act in violation of R.C. 1345.02. In its first cross-assignment of error, appellee argues that the trial court erred when it failed to award damages to the customers who paid the fee. Appellee contends that reimbursement to customers damaged by a supplier's unfair and deceptive acts is a primary goal of the Act.

For about two years preceding the filing of this action, appellant regularly charged its customers a $95 delivery and handling fee (the "fee") in connection with the sale of new and used motor vehicles. The fee was pre-printed in the price section of appellant's retail buyer's orders and described on the contract as follows:

"\* DELIVERY & HANDLING CONSISTS OF ANY OR ALL OF THE FOLLOWING:

" \* Vehicle Inspection upon arrival at Motzer Dodge for dents, scratches, paint blemishes or other factory or shipping damage.

" \* Stocking in of vehicle including preparing 2 key tags for key storage, manilla envelope for filing of all relevant information on vehicle while in inventory.

" \* Interior and exterior grooming of vehicle prior to delivery including washing, exterior buffing as necessary to remove overspray and film on paint, vacuuming of interior, and other interior grooming as necessary such as removing grease smudges from door panels, seats and carpets.

" \* Vehicles in inventory are subject to interest charges, property taxes, and insurance charges."

In its July 23, 1992 judgment entry granting judgment to appellant, the trial court found the following sales practices to be unfair and deceptive:

"1. A supplier who preprints the amount of a negotiable delivery and handling fee or other fee covering the supplier's overhead costs in the price column of its retail buyer's order form commits an unfair and deceptive act or practice in violation of R.C. 1345.02(A) inasmuch as this manner of presentation of the fee infers that the fee is to be added to the sale price of all transactions and is not negotiable.

"2. A supplier who describes a delivery and handling fee or other fee covering the supplier's overhead costs as including "any and all" services and expenses without identifying what, if any, services or expenses apply to the subject of the consumer transaction commits an unfair and deceptive act or practice in violation of R.C. 1345.02(A).

"3. A supplier who prints a boilerplate description of delivery and handling services on its retail buyer's order form when such services include items subject to the supplier's reimbursement agreement with the manufacturer commits an unfair and deceptive act in violation of R.C. 1345.02(A)."

█ We note at the outset that Ohio's Consumer Sales Practices Act is remedial legislation and is to be construed liberally. *Renner v. Procter & Gamble Co.* (1988), 54 Ohio App.3d 79, 86, 561 N.E.2d 959, 965–966. R.C.

1345.02(A) prohibits a supplier from committing unfair or deceptive acts in a consumer transaction. The code lists ten examples of deceptive acts or practices. R.C. 1345.02(B)(1) through (10); see *Thompson v. Jim Dixon Lincoln Mercury, Inc.* (Apr. 27, 1983), Butler App. No. CA82–11–0109, unreported, 1983 WL 4353. This court stated in *Thompson* that "[t]his list is not exhaustive and does not limit the broad scope of the terms 'unfair' or 'deceptive.'" Furthermore, this court recognized that administrative rules were adopted to aid in interpreting R.C. 1345.02(A). *Id.;* R.C. 1345.05(B)(2).

■ A thorough review of the record shows that competent, credible evidence supports the trial court's July 23, 1992 findings. During the bench trial, the evidence disclosed that many of the services listed in the "Delivery & Handling" description were not performed on the subject vehicle. Appellant's president, Charles Louis Motzer, testified that vehicle inspection for factory or shipping damage was not a service that applied to any of the used vehicles sold by the dealership. Moreover, many of the used vehicles did not incur interest charges or property taxes. New vehicles too, approximately seventeen percent, incurred only minimal interest charges, property taxes and insurance charges, because according to appellant's president, they were "special order" sales.

The evidence also demonstrated an overlap between the new vehicle preparation services the manufacturers paid appellant to perform and the services described on appellant's retail buyer's order. For new AMC, Jeep and Renault cars, the American Motors' Predelivery Inspection manual required each new vehicle received by appellant to be inspected thoroughly for transportation loss or damage, and instructed that the exterior be washed, grease smudges be removed, interior be vacuumed, and minor paint blemishes be corrected. Car buyers were provided a "Predelivery Inspection Checklist" at the time of their purchase assuring them that appellant had performed these services at no charge.

The evidence further showed that some of the services described in the "Delivery & Handling" section of appellant's retail buyer's order would have been paid by the manufacturer had appellant submitted a warranty invoice. Appellant's vice-president, George Motzer, manager of the parts and service department, acknowledged, however, that such warranty claims were not always submitted.

With regard to the negotiability of the fee, a former salesperson of appellant, Marion Arbino, testified that every customer of both new and used vehicles was expected to pay the fee. He further testified that the fee was reviewed only if the customers inquired about it. The testimony of several customers corroborated Arbino's testimony. The record further shows that when customers did inquire about the fee, appellant's salespeople stated that it was a "standard fee" that had "to be on every car" going through appellant. All customers testified

that, based on the foregoing and the fact that the fee was preprinted, they believed the fee was neither optional nor negotiable.

After viewing the record, we find that the trial court's application of the Act to appellant's fee was proper. Similar practices of charging a handling and delivery fee have also been found to violate the Act. See *Charlie's Dodge, Inc. v. Celebrezze* (1991), 72 Ohio App.3d 744, 596 N.E.2d 486. Appellant's third assignment of error is therefore overruled.

■ Although the trial court held that appellant's imposition of the fee constituted an unfair and deceptive act, it did not order appellant to reimburse the customers who paid the $95 fee. Appellee argues in its first assignment of error on cross-appeal that the trial court's failure to order restitution was error. We agree.

In the case at bar, appellee sought restitution of the $95 fee pursuant to R.C. 1345.07(B), which provides:

"On motion of the attorney general and without bond, in the attorney general's action under this section, the court may make appropriate orders, including appointment of a referee or a receiver, for sequestration of assets, to reimburse consumers found to have been damaged, to carry out a transaction in accordance with a consumer's reasonable expectations, to strike or limit the application of unconscionable clauses of contracts so as to avoid an unconscionable result, or to grant other appropriate relief. * * * "

As indicated by the foregoing language, restitution is not an automatic or mandatory remedy for violations of the Act. It is one the courts may order. However, we believe that the trial court's discretion to award restitutionary relief should be exercised with a view toward the purposes of the Act. In 1978, the Act was amended to "provide strong and effective remedies, * * * to assure that consumers will recover any damages caused by such acts and practices, and to eliminate any monetary incentives for suppliers to engage in such acts and practices." *Einhorn v. Ford Motor Co.* (1990), 48 Ohio St.3d 27, 548 N.E.2d 933. Only by ordering restitution of the $95 fee to all the customers who paid it can we give effect to the expressed intention of our legislature to provide a strong consumer protection program which safeguards the public interest and the well-being of consumers. We therefore hold that the trial court abused its discretion by failing to order restitution of the $95 fee. Appellee's first cross-assignment of error is well taken and sustained.

■ In its fourth assignment of error, appellant argues that the trial court erred in assessing civil penalties against appellant. Appellant argues that the trial court's imposition of $9,500 in civil penalties was an abuse of discretion, especially since there was no evidence of any intentional wrongdoing by appellant.

R.C. 1345.07 addresses the remedies available to the Attorney General upon violation of the Act and states:

"(D) In addition to the other remedies provided in this section, if the violation is an act or practice that was declared to be unfair, deceptive, or unconscionable by a rule adopted pursuant to division (B)(2) of section 1345.05 of the Revised Code * * * or an act or practice that was determined by a court of this state to violate section 1345.02 or 1345.03 of the Revised Code * * *, the attorney general may request and the court may impose a civil penalty of not more than twenty-five thousand dollars against the supplier. * * * "

The Ohio Supreme Court has held that consumer protection laws must be interpreted in a manner that is calculated to provide courts with flexibility in fashioning remedies intended by the General Assembly to redress the wrong committed. See *Celebrezze v. Hughes* (1985), 18 Ohio St.3d 71, 18 OBR 102, 479 N.E.2d 886. In light of the Supreme Court's explicit policy statement, it is evident that R.C. 1345.07(D) vests courts with broad discretion.

In the case at bar, the trial court found that several of appellant's sales and advertising practices constituted unfair and deceptive practices. It is well-established law in Ohio that an act is deceptive if it "has the likelihood of inducing a state of mind in the consumer that is not in accord with the facts." *Thompson, supra,* quoting *Brown v. Bredenbeck* (C.P.1975), 2 O.O.3d 286. See, also, *Crull v. Maple Park Body Shop* (1987), 36 Ohio App.3d 153, 521 N.E.2d 1099. The "basic test is one of fairness." *Thompson, supra.* Appellant's contention that a trial court's award of civil penalties requires an initial finding of intentional wrongdoing is therefore without merit. R.C. 1345.07(D) does not require such finding. Requiring it would furthermore take the teeth out of the Act. Appellant's fourth assignment of error is overruled.

■ In its third cross-assignment of error, appellee argues that the trial court erred when it barred the restitution claim of David Blower due to his death.

R.C. 2305.21 governs the survival of actions and provides:

"In addition to the causes of action which survive at common law, causes of action for mesne profits, or injuries to the person or property, or for deceit or fraud, also shall survive; and such actions may be brought notwithstanding the death of the person entitled or liable thereto."

Because Blower's cause of action for unfair or deceptive sales practices did not exist at common law and because we disagree with appellee that Blower's claim constitutes an "injury to property," we find that Blower's claim did not survive

his death under R.C. 2305.21. Appellee's third cross-assignment of error is overruled.

The judgment is affirmed in part, reversed in part and the cause is remanded.

*Judgment accordingly.*

FRED E. JONES, P.J., and KOEHLER, J., concur.