John W. FERRON, Plaintiff,

v.

ECHOSTAR SATELLITE, LLC, et al., Defendants.

Case No. 2:06–CV–00453.

United States District Court, S.D. Ohio, Eastern Division.

Sept. 29, 2009.

Lisa A. Wafer, Jessica G. Fallon, Ferron & Associates, Columbus, OH, for Plaintiff.

Vincent J. Trimarco, Sr., Smithtown, NY, for Defendant.

***AMENDED OPINION AND ORDER***

MICHAEL H. WATSON, District Judge.

Plaintiff in this diversity action asserts claims under the Ohio Consumer Sales

Practices Act ("OCSPA"), Ohio Rev.Code § 1345.01 *et seq.,* and the Ohio Electronic Mail Advertising Act ("EMAA"), Ohio Rev. Code § 2307.64. This matter is before the Court on the motion for summary judgment filed by defendants EchoStar Satellite LLC ("EchoStar") and E-management Group, Inc. ("E–Management") (collectively, "defendants"). (Doc. 291). For the reasons that follow the Court grants defendants' summary judgment motion.

## I. Facts

Plaintiff John W. Ferron is an attorney who lives and practices law in the State of Ohio. He purposely solicits, receives, and saves email advertisements, and then files lawsuits, arguing the email advertisements violate Ohio law. Ferron estimates he has saved about 45,000 email advertisements over a six month period.

The instant lawsuit concerns emails that Ferron received which advertised the satellite dish products and services of Dish Network. Ferron has indicated he visited about twelve satellite dish websites and purposely provided his email addresses to those sites. Before he provided his email addresses to the websites, Ferron contacted Dish Network call centers to obtain information about the terms and conditions of various Dish Network products and services.

Ferron filed this action after he collected a large number of satellite dish email advertisements. Ferron alleges that the email advertisements he received were deceptive in their price quotes, offers of free equipment, and terms of subscription. Ferron was previously aware of terms and conditions for obtaining Dish Network service and products as a result of his correspondence with the Dish Network call centers.

EchoStar provides Dish Network products and services throughout the United States. EchoStar provides these products to retailers, not to individual customers. The retailers then sell products to individual customers, and are responsible for their own marketing and advertising. These retailers often hire third-parties to market their products, without correspondence with EchoStar. EchoStar has no input regarding email advertising, which is sometimes utilized by a retailers to market Dish Network products.

E–Management is a registered Florida Corporation that operates primarily in Florida. E–Management is an authorized retailer of EchoStar, and is also authorized to market for Dish Network products and services. E–Management communicates with a potential customer, if a sale is made, E–Management forwards the customer information to EchoStar.

## II. Summary Judgment

The standard governing summary judgment is set forth in Federal Rule of Procedure 56(c), which provides:

> The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c).

The Court may grant summary judgment if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). *See also Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 588, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Petty v. Metropolitan Government of Nashville– Davidson County,* 538 F.3d 431, 438–39 (6th Cir.2008).

When reviewing a summary judgment motion, the Court must draw all reasonable inferences in favor of the nonmoving party, who must set forth specific facts showing that there is a genuine issue of material fact for trial, and the Court must refrain from making credibility determinations or weighing the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Henderson v. Walled Lake Consol. Schools*, 469 F.3d 479, 487 (6th Cir.2006). The Court disregards all evidence favorable to the moving party that the jury would not be not required to believe. *Reeves*, 530 U.S. at 150–51, 120 S.Ct. 2097. Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir.2009).

Thus, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234–35 (6th Cir.2003) (quoting *Anderson*, 477 U.S. at 251–52, 106 S.Ct. 2505).

## III. Discussion

Defendants advance seven grounds for summary judgment. First, they maintain Ferron's OCSPA claims fail because Ferron had prior knowledge of the terms and conditions for the purchase of DISH Network products, and therefore he could not have been deceived by emails which did not contain the terms and conditions. Second, defendants contend the omitted terms and conditions were merely incidental and not material. Third, EchoStar argues that it is entitled to summary judgment on Ferron's OCSPA and EMAA claims be-

cause it did not receive a direct benefit from the third-party email advertisements. Fourth, defendants assert Ferron cannot prove any OCSPA violations with respect to 155 of the 703 emails at issue in this case. Fifth, defendants aver that Ferron's preexisting business relationship and consent to receive the email advertisements precludes liability under the EMAA. Sixth, defendants posit that the subject email advertisements are not "offers" or "solicitations to offer" and therefore do not support liability under the OCSPA. Seventh, defendants maintain Ferron cannot prevail on his OCSPA claims concerning the failure to register the business with the Ohio Secretary of State because the registration requirement does not apply to companies engaged solely in interstate commerce, and because in any event, the failure to register is not an actionable wrong under the OCSPA. The Court finds the first issue to be dispositive, and therefore declines to address the remaining grounds.

Defendants first argue that they are entitled to summary judgment on Ferron's OCSPA claims because Ferron was already aware of the terms and conditions for the purchase of DISH Network products and services, and therefore he could not have been deceived by emails that did not contain the terms and conditions. Ferron asserts that he is not required to prove that he was deceived in order to prevail on his OCSPA claims.

The purpose and history of the OCSPA were reviewed in *Thomas v. Sun Furniture and Appliance Co.*, 61 Ohio App.2d 78, 399 N.E.2d 567 (1978). The court in *Thomas* observed that the OCSPA was modeled, in part, after the Uniform Consumer Sales Practices Act ("UCSPA"). 61 Ohio App.2d at 81, 399 N.E.2d 567. The UCSPA provided that it was to be construed " 'to protect consumers from suppliers who commit deceptive and unconscion-

able sales practices [and] to encourage the development of fair consumer sales practices.'" *Id.* (quoting 7A Uniform Laws Anno. 3, Uniform Consumer Sales Practices Act, Section 1 (1978)). The court in *Thomas* also considered the staff report of the Ohio Legislative Service Commission, which stated in its preface:

Deception is the classic consumer problem. From an early time the law has provided remedies for the buyer who has been deceived. As marketing and consumer services have become more complex, the private remedies of the common law, and traditional criminal actions, have become relatively ineffective as a means by which the consumer may protect himself, and the government has intervened.

*Id.* (quoting Ohio Legislative Service Commission, Report No. 102, Fraud, Deception and Other Abuses in Consumer Sales and Services (1971)).

The purpose of the CSPA is to protect consumers from the harm of deceptive or unconscionable sales practices. *Roelle v. Orkin Exterminating Co.* (Nov. 7, 2000), Franklin App. No. 00AP–14, 2000 WL 1664865. The statute is intended to give protection to consumers from unscrupulous suppliers of goods or services in a more efficient, expedient, and affordable manner than would be available in a common law tort or contract action. *State ex rel. Celebrezze v. Howard* (1991), 77 Ohio App.3d 387, 393, 602 N.E.2d 665. The CSPA has a remedial purpose and must accordingly be liberally construed in favor of consumers. *Einhorn v. Ford Motor Co.* (1990), 48 Ohio St.3d 27, 29, 548 N.E.2d 933.

*Charvat v. Farmers Ins. Columbus, Inc.,* 178 Ohio App.3d 118, 133, 897 N.E.2d 167 (2008).

Ferron asserts his OCSPA claims under, *inter alia,* Ohio Rev.Code § 1345.02(A), which provides as follows:

No supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction. Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction.

*Id.* The OCSPA defines "supplier" as "a seller, lessor, assignor, franchisor, or other person engaged in the business of effecting or soliciting consumer transactions, whether or not the person deals directly with the consumer." Ohio Rev.Code § 1345.01(C). The OCSPA defines "consumer transaction" as "a sale, lease, assignment, award by chance, or other transfer of an item of goods, as service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things." Ohio Rev.Code § 1345.01(A).

The OCSPA grants the Ohio Attorney General the authority to define with reasonable specificity acts which violate Ohio Rev Code §§ 1345.02 and 1345.03. Ohio Rev.Code § 1345.05(B)(1). Ferron asserts that defendants have committed several acts that the Ohio Attorney General has identified as deceptive in the Ohio Administrative Code ("OAC"). First, Ferron refers to a section of the OAC that provides in part: "It is a deceptive act or practice in connection with a consumer transaction for a supplier, in the sale or offering for sale of goods or services, to make any offer in written or printed advertising or promotional literature without stating clearly and conspicuously in close proximity to the words stating the offer any material exclusions, reservations, limitations, modifications, or conditions." OAC § 109:4–3–02. Second, Ferron relies upon an OAC provision which places limitations on the word "free." OAC § 109:4–3–04. That section states in pertinent part, "[w]hen using the word "free" in a consumer transaction, all of the terms, conditions, and obligations

upon which receipt of the "free" goods or services are contingent shall be set forth clearly and conspicuously at the outset of the offer." OAC § 109:4–3–04(C). Third, Ferron cites the OAC section governing prizes, which provides that it is a deceptive act for a supplier to notify any consumer that the consumer is eligible to receive anything of value "unless the supplier clearly and conspicuously discloses to the consumer any and all conditions necessary to … receive anything of value." OAC § 109:4–3–06(D)(3). Where the violation was an act declared by the Ohio Attorney General to be deceptive, the OCSPA provides that the consumer may rescind the transaction or recover the greater of three times his actual damages or $200. Ohio Rev.Code § 1345.09(B).

Ferron argues that the subject DISH Network email advertisements violate the aforementioned OAC provisions because the advertisements fail to disclose: (1) that the consumer must agree to subscribe to DISH Network's satellite television services for at least eighteen months in order to receive the free goods and services; (2) that the monthly price quoted in the advertisements applies only to the first ten months of the required eighteen-month subscription; (3) that Dish Network retains ownership of the advertised "FREE" satellite television equipment; and (4) that the consumer must undergo a credit check and provide DISH Network with a valid credit card.

Defendants argue that Ferron cannot recover for the alleged violations of the OCSPA because he could not have been deceived by any of the email advertisements. Defendants rely primarily on four Ohio appellate decisions in support of this proposition: *Chesnut v. Progressive Cas. Ins. Co.*, 166 Ohio App.3d 299, 850 N.E.2d 751 (8 Dist.2006); *Walker v. Dominion Homes, Inc.*, 164 Ohio App.3d 385, 842 N.E.2d 570 (10 Dist.2005); *Motzer Dodge*

*Jeep Eagle, Inc. v. Ohio Atty. Gen.*, 95 Ohio App.3d 183, 642 N.E.2d 20 (12 Dist. 1994); *Crull v. Maple Park Body Shop*, 36 Ohio App.3d 153, 521 N.E.2d 1099 (12 Dist. 1987).

In *Chesnut*, the plaintiff, a Louisiana resident, bought a used 2000 Saturn SL2 automobile from a dealership in Louisiana in November 2000. In July 2000, the original owner's insurer, Progressive, declared the Saturn a total loss as a result of fire damage. When Progressive sold the car to the dealership, it determined that the cost of repairing the Saturn was less than seventy-five percent of the actual cash value. This allowed Progressive to sell the car with a clean title, as opposed to a salvage title. The dealership took title to the Saturn in September 2000.

The plaintiff saw the Saturn disassembled at the dealership before he purchased it. The dealership informed the plaintiff that the Saturn was being rebuilt because it had sustained fire damage. The plaintiff paid $8,500 for the Saturn, which at the time had been driven less than 6000 miles. Afterwards, the plaintiff drove the Saturn about 50,000 miles. He experienced virtually no problems with the car.

In January 2002, the plaintiff filed an action against Progressive, asserting violation of the OCSPA as well as unjust enrichment. The plaintiff premised both claims on the allegation that Progressive violated Louisiana's titling statute by failing to obtain a salvage title after declaring the Saturn a total loss. Progressive filed a motion for summary judgment, which the trial court granted.

On appeal, the plaintiff in *Chesnut* argued that the trial court erred by finding as a matter of law that Progressive did not commit a deceptive act. Specifically, the plaintiff contended that Progressive violated the OCSPA in two respects. First, he asserted Progressive *per se* violated the

OCSPA by failing to comply with the Louisiana titling statute. Second, the plaintiff argued Progressive violated the OCSPA by representing the Saturn was not damaged to the extent it was declared a total loss. The court of appeals rejected both arguments. *Chesnut,* 166 Ohio App.3d at 308, 850 N.E.2d 751. Initially, the court noted that to determine whether an act or practice is deceptive, the incident is viewed from the consumer's standpoint.[1] *Id.* at 307, 850 N.E.2d 751.

> In the instant case, Progressive titled a vehicle in accordance with the titling laws of the applicable state. As a result, the Saturn had a "clean" title, although it had previously been declared a total loss and was repaired before Chestnut purchased it. However, Chestnut was fully aware of the situation, as Ray's informed him that the Saturn had been damaged in a fire, and he observed the vehicle as it was being repaired. He also spent $8,500 on a car with approximately 6,000 miles on it, when the ACV was over $14,000. As Progressive stated in its brief, "this is not a case where an unsuspecting consumer purchased a vehicle with no knowledge of its prior history and was deceived because the vehicle's title failed to reveal that it had been damaged. Plaintiff here knew full well that the vehicle had sustained fire damage and was able to purchase the vehicle for a fraction of its retail value."

*Id.* at 307–08, 850 N.E.2d 751.

In July 1984, the plaintiff in *Crull* arranged to have the defendant paint his 1971 Mustang so that he could drive it and enter it in an occasional car show. In early July 1984, the defendant gave the plaintiff a written estimate of $1,348.20 for the paint job. The plaintiff delivered the car to the defendant's shop in late July. A few weeks later the defendant noticed that hail had damaged the Mustang. The defendant then told the plaintiff that additional work would be required. The plaintiff approved the additional cost. The defendant finished the paint job in October 1984, and the plaintiff was apparently satisfied with the work. Nevertheless, the plaintiff later became dissatisfied with the quality of the paint job, and filed an action for breach of contract and violation of the OCSPA. In part, the plaintiff alleged the defendant violated the OCSPA by failing to post a sign stating that consumers had the right to receive a written estimate as required by OAC § 109:4–3–13(A)(2). The trial court granted the defendant's summary judgment motion as to the plaintiff's OCSPA claims, and the case went to trial on the breach of contract claim. The trial court found in favor of the defendant following the trial, and dismissed the action.

On appeal, the plaintiff in *Crull* argued that the trial court erred in granting summary judgment on his OCSPA claim. The appellate court rejected the argument, stating:

> Under the facts as presented by Sorrell's affidavit, we are unable to conclude that the failure to post the sign was likely to "induce a state of mind in [appellant] that is not in accord with the facts."
>
> Appellees provided appellant with a written estimate and appellant approved an amount larger than the original estimate before the repairs were finished. Thus, all the information required to be

---

1. The courts in *Walker* and *Motzer Dodge* also stated this principle. *See Walker,* 164 Ohio App.3d at 394, 842 N.E.2d 570; *Motzer Dodge,* 95 Ohio App.3d at 192, 642 N.E.2d 20. Significantly, the standard does not refer to "a consumer," "a reasonable consumer," "an average consumer," or "the least sophisticated consumer." Rather, the standard examines the supplier's conduct from the standpoint of *"the* consumer."

included in the sign was actually complied with. Therefore, we fail to see that appellant could have been deceived by the omission of the sign.

*Crull,* 36 Ohio App.3d at 158, 521 N.E.2d 1099. Together, *Chesnut* and *Crull* stand for the proposition that a plaintiff who could not have been deceived by the a supplier's conduct cannot prevail on an OCSPA claim.[2] *Accord Davis v. Axelrod Chrysler Plymouth, Inc.,* No. 81765, 2003 WL 194888, at *2–3 (Ohio App. 8 Dist. Jan. 30, 2003) (summary judgment for supplier affirmed where evidence showed that consumer could not have been deceived under the OCSPA).

In the instant case, defendants have come forward with evidence showing that early on Ferron, who is a lawyer, acquired knowledge of all of the terms and conditions for obtaining DISH Network products and services. Ferron does not dispute defendants' assertion, and in fact expressly acknowledges that he is not alleging that he was deceived by any of the alleged OCSPA violations. He argues, however, that the above-mentioned Ohio decisions are distinguishable on the basis that the plaintiffs in those cases alleged that they were actually deceived by the supplier's conduct. (Memo. In Opp. (Doc. 306) at 22). Ferron contends that in contrast to the plaintiffs in the cases that defendants cite, he does not assert that he was deceived. Rather, Ferron maintains, he is asserting violation of specific consumer advertising regulations which were promulgated by the Ohio Attorney General under Ohio Rev.Code § 1345.05(B)(2).

Ferron's arguments are without merit. First, nothing in *Chesnut* or *Crull* indicates that the decisions turned upon the fact that the plaintiffs claimed to have

**2.** Defendants also cite decisions from courts in other jurisdictions which have reached similar conclusions while interpreting their states' consumer protection statutes. *See Hodges v. Koons Buick Pontiac GMC,* 180 F.Supp.2d 786, 794–95 (E.D.Va.2001) (no violation of Virginia Consumer Protection Act where buyers knew that the car they purchased had been used as a "demo"); *Crandall v. Grbic,* 36 Kan.App.2d 179, 138 P.3d 365, 378 (2006) (claim under Kansas Consumer Protection Act precluded because inspector's report mentioned in numerous places problems with patio roof and the defendants therefore did not deceive plaintiff); *Land v. Dixon,* No. E2004–03019–COA–CV, 2005 WL 1618743, at *4 (Tenn.App. July 12, 2005) (claim under Tennessee Consumer Protection Act fails where the plaintiff had knowledge of the alleged misrepresentations as well as the true facts); *McGraw v. Loyola Ford,* 124 Md. App. 560, 723 A.2d 502, 511 (1999) (Maryland Consumer Protection Act not violated by description of vehicle as new because buyer was aware that it was a demo); *Zekman v. Direct Am. Marketers, Inc.,* 182 Ill.2d 359, 231 Ill. Dec. 80, 695 N.E.2d 853, 861–62 (1998) (plaintiff's knowledge that he would be charged for 900 number telephone call precluded claim under Illinois Consumer Fraud and Deceptive Business Practices Act); *Legg v. Castruccio,* 100 Md.App. 748, 642 A.2d 906, 912 (1994) (no liability under Maryland Consumer Protection Act for landlord's failure to inform tenant that her utility bill would include usage by other tenants where tenant was aware of the arrangement and made conscious choice to accept it); *Hill v. John Banks Buick, Inc.,* 875 S.W.2d 667, 671 (Tenn.App. 1993) (Tennessee Consumer Protection Act not violated where uncontroverted evidence showed car buyer knew the vehicle was a demonstrator with actual mileage); *Manning v. Mountain View Ford, Inc.,* 1992 WL 230174, at *2 (Tenn.App. Sept. 21, 1992) (no violation of Tennessee Consumer Protection Act where buyer "knew unequivocally that the car she purchased had no extended warranty."); *Baldwin v. Priem's Pride Motel, Inc.,* 224 Kan. 432, 580 P.2d 1326, 1329 (1978) (buyers' knowledge of defects in house precluded claim under Consumer Protection Act); *see also* Victor E. Schwartz and Cary Silverman, *Common–Sense Construction of Consumer Protection Acts,* 54 U. Kan. L.Rev. 1 (2005) (identifying abuses of state consumer protection laws and advocating construction that would require consumers to show, *inter alia,* injury in fact and reliance).

been deceived, or for that matter, that the plaintiffs even asserted they had been deceived. Second, contrary to Ferron's contention, the plaintiff in *Crull*, like Ferron, premised his OCSPA claim on a violation of an administrative rule promulgated by the Ohio Attorney General under Ohio Rev.Code § 1345.05(B)(2).

Ferron relies on three unreported Ohio appellate decisions that stand for the proposition that a consumer need not prove the supplier acted with an intent or knowledge in order to prevail on an OCSPA claim. *See Grieselding v. Krischak*, No. L06-1010, 2007 WL 1575521, at *3 (Ohio App. 6 Dist. June 1, 2007); *Zindle v. Hawks*, No. 13016, 1987 WL 16660, at *3 (Ohio App. 9 Dist. Sept. 2, 1987); *Moyer Excavating & Trucking v. Lewis*, No H–84–11, 1984 WL 14421, at *1 (Ohio App. 6 Dist. Nov. 16, 1984). These decisions are largely inapposite because defendants do not argue that Ferron has failed to adduce evidence of intent or knowledge; rather, they maintain that Ferron cannot recover under the OCSPA when it is clear that he was not deceived by the email advertisements. *Zindle* touches upon the latter issue, and therefore merits further discussion.

The plaintiff in *Zindle* purchased a refrigerator. His wife punctured the refrigerator's evaporator with a knife while trying to remove ice buildup. The plaintiff then contacted the retailer who sold him the refrigerator, and the retailer referred the plaintiff to the defendant. The plaintiff contacted the defendant, and the defendant informed the plaintiff that the necessary replacement parts would cost $155 and that recharging the refrigeration system would cost $72. The plaintiff declined to purchase the replacement parts, and instead opted to have someone else weld the puncture. After this was done, the plaintiff took the refrigerator, without its doors, to the defendant's place of business. The defendant told the plaintiff that he could not perform the work without the doors. This was the first face-to-face contact between the plaintiff and the defendant. The defendant did not provide the plaintiff a written estimate.

The plaintiff later returned with the refrigerator doors, and the defendant said he would try to complete the work within the next two days. The plaintiff went to the defendant's place of business two days later. The defendant was not there, but his daughter informed the plaintiff that the service had been completed and the charge would be $72 plus tax. The plaintiff refused to pay, and the daughter would not allow the plaintiff to take the refrigerator.

The plaintiff in *Zindle* then filed an action in the Akron, Ohio Municipal Court, seeking damages and attorney's fees for violation of the OCSPA. The defendant asserted a counterclaim for the value of the work he performed, and also sought attorney's fees. The matter proceeded to a bench trial. The trial court found for the defendant, and awarded him $72 in damages and $800 in attorney's fees.

On appeal, the plaintiff challenged the trial court's alternative findings that no violation of the OCSPA had occurred, or, if a violation had occurred it was due to a bona fide error. The appellate court in *Zindle* first addressed whether an OCSPA violation had occurred. The court found that the record showed that the defendant had violated two provisions of the OAC. First, the defendant failed to provide the plaintiff at their first face-to-face meeting a written form informing the plaintiff of, inter alia, the anticipated date of completion of the repair and the anticipated cost. *Zindle*, 1987 WL 16660, at *4 (citing OAC § 109:4–3–05(A)(1)). Second, the defendant failed to post a sign providing the plaintiff notice that he had the right to a written estimate. *Id.* (citing OAC

§ 109:4–3–05(A)(1)). In finding these violations, the court opined:

> Although there is no showing that the appellant could have been deceived, and thus needed protection, the purpose to encourage the development of fair consumer practices requires the reversal of the trial court's judgment that no violation occurred.

*Id.* The court of appeals next considered whether the violations were the result of a bona fide error. *Id.* at *4–5. The bona fide error defense is set forth in Ohio Rev.Code § 1345.11(A), which provides:

> In any case arising under Chapter 1345, of the Revised Code, if a supplier shows by a preponderance of the evidence that a violation resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adopted to avoid the error, no civil penalties shall be imposed against the supplier under division (D) of section 1345.07 of the Revised Code, no party shall be awarded attorney's fees, and monetary recovery shall not exceed the amount of actual damages resulting from the violation.

*Id.* The court of appeals in *Zindle* found that substantial evidence supported the trial court's alternative findings of bona fide error and no damages. Accordingly, the appellate court affirmed the trial court's holding that the plaintiff was not entitled to damages under the OCSPA. 1987 WL 16660, at *5.

Inasmuch as the appellate court in *Zindle* agreed with the trial court's alternative holding, the appellate court need not have reached the issue whether the OCSPA was not violated. That is, the court of appeals could have assumed a violation without specifically finding one. As a result, its comments on that issue are *obiter dicta.*

In this diversity case, the Court must apply the substantive law of the forum state. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). In doing so, this Court is bound by the decisions of the state's highest court. *Pennington v. State Farm Mut. Auto. Ins. Co.,* 553 F.3d 447, 450 (6th Cir.2009). If the state's highest court has not directly addressed the issue, however, this Court must predict how the state's highest court would resolve the matter. *Andrews v. Columbia Gas Transmission Corp.,* 544 F.3d 618, 624 (6th Cir.2008). In that case, the decisions of the state's intermediate appellate courts are deemed authoritative, unless there is a strong showing that the state's highest court would reach a different result. *Id.*

Neither side in this conflict cites controlling decisions by the Ohio Supreme Court. Two reported Ohio appellate decisions cited by defendants indicate that where a consumer could not have been deceived by the supplier's alleged conduct, the supplier cannot be held liable under the OCSPA. *See Chesnut,* 166 Ohio App.3d at 308, 850 N.E.2d 751; *Crull,* 36 Ohio App.3d at 158, 521 N.E.2d 1099; *accord Davis,* 2003 WL 194888, at *2–3. As *Crull* demonstrates, this rule applies even when, as in the instant case, the consumer asserts a violation of a rule promulgated by the Ohio Attorney General pursuant to Ohio Rev. Code § 1345.05(B)(2). *See* 36 Ohio App.3d at 158, 521 N.E.2d 1099. Significantly, the fact that the consumers could not have been deceived was pivotal in both *Chesnut* and *Crull.*

The only conflicting Ohio authority cited by Ferron is in the form of *obiter dicta* in an unreported decision. Presumably, had the court of appeals in *Zindle* not upheld the bona fide error defense, the consumer who had stiffed the repairman for $72 would have been rewarded with $400 in statutory damages under the OCSPA, even though he could not have been deceived. The *dicta* in *Zindle* runs counter to principles of substantial justice and common

sense. Other cases that may arguably support Ferron's position either suffer from the same flaw or are distinguishable. *See, e.g., Motzer Dodge Jeep Eagle, Inc. v. Ohio Atty. Gen.,* 95 Ohio App.3d 183, 642 N.E.2d 20 (12 Dist.1994) (consumers who had not seen lower advertised price could recover under OCSPA; however, the consumers had actually purchased cars at higher price).

*Chesnut* and *Crull* represent a reasonable limitation on the reach of the OCSPA.[3] Deception is the *sine qua non* of the OCSPA. Given that in Ohio deception is measured from the standpoint of the consumer asserting the OCSPA claim, it logically follows that where the record shows affirmatively that the consumer could not have been deceived, no OCSPA violation has occurred. For all of these reasons, the Court concludes that the rule applied in *Chesnut* and *Crull* represents the law of Ohio by which this Court is bound.

Here, the record is replete with uncontroverted evidence that Ferron could not have been deceived by the subject email advertisements. Ferron, a practicing attorney, does not allege that he was deceived; rather, he argues it makes no legal difference that he was not. Indeed, Ferron acted purposely to receive the email advertisements he challenges so that he could file this lawsuit. Under *Chesnut* and *Crull,* Ferron cannot succeed on his OCSPA claims. Accordingly, defendants are entitled to summary judgment in their favor as a matter of law on Ferron's OCSPA claims.

In closing, the Court notes that substantial resources have been expended in this case by the Court and the parties. The parties have been actively litigating this action for more than three years. At last count, 360 documents have been filed in this case. This case has required the undersigned Judge, as well as the Magistrate Judge, to issue numerous lengthy and detailed opinions and orders. To put it bluntly, this case has demanded an inordinate amount of the Court's limited resources. And these resources have been expended not so much to determine whether a compensable civil wrong has occurred—clearly no civil wrong has occurred here—but rather for the sake of adjudicating Ferron's calculated scheme to diversify his income stream. Even construing the OCSPA in the broadest manner, attorney Ferron's manufactured claims in this case ought not to prevail. *See Burdge v. Supervalu Holdings, Inc.,* No. C–060194, 2007 WL 865483, at *5 (Ohio Ct.App. 1 Dist., Mar. 23, 2007) (In a case in which Ferron represented the plaintiff, the court of appeals affirmed the trial court's imposition of sanctions against him, stating, "We are offended by the contrived nature of this frivolous action, which has wasted much time, paper, and other resources to the prejudice of legitimate disputes between parties, especially those involving the consumer-protection laws of Ohio.").

As defendants correctly point out, the Court has already ruled that Ferron's EMAA claims are preempted.

## IV. Disposition

Based on the above, the Court **GRANTS** defendants' motion for summary judgment (Doc. 291). Accordingly, the Court **DISMISSES** all of Ferron's claims against all defendants with prejudice.

The Court also **GRANTS** Hydra LLC's unopposed motion to dismiss its counterclaim without prejudice. (Doc. 359).

---

**3.** *See generally* Victor E. Schwartz and Cary Silverman, *Common–Sense Construction of* *Consumer Protection Acts,* 54 U. Kan. L.Rev. 1 (2005).

The Clerk shall enter final judgment in favor of defendants, and against Ferron, dismissing Ferron's claims with prejudice.

The Clerk shall remove this case from the Court's Civil Justice Reform Act report.

**IT IS SO ORDERED.**