Appellant Barbara Shuman timely appeals the judgment of the Lorain County Common Pleas Court, Juvenile Division, which adjudicated her daughter Ashley to be a dependent child and granted permanent custody of Ashley to Lorain County Children Services. We affirm.
 I.
When Ashley Shuman was born on December 11, 1997, appellant and her husband,[1] Nathaniel ("Ray") Shuman, were already subject to the jurisdiction of the juvenile court in the matter of their son Dylan who had been adjudged a dependent child. Dylan was in the temporary custody of Lorain County Children Services ("LCCS"). LCCS had filed a case plan with the ultimate goal that the Shumans would reunite with Dylan. To accomplish reunification, the parents were required to achieve the following goals: developing parenting skills, providing a clean and safe home suitable for raising a young child, improving personal hygiene, and, for Mr. Shuman, developing anger management skills and finding regular employment. The Shumans had been down this road before. Their first two children had been permanently placed with LCCS after they were adjudicated dependent children, in part based on Mr. Shuman's physical abuse of the children. In 1994, Mr. Shuman was convicted of child endangering and was still on probation for this offense at the time of Ashley's birth.
With this history in mind, and knowing that the Shumans had achieved few, if any, of their goals in the case plan for Dylan, LCCS sought and received an Ex-parte Order of Pre-dispositional Interim Custody of Ashley from the juvenile court on December 12, 1997. The agency's complaint alleged that Ashley was in immediate danger if released to the custody of her parents and it requested permanent custody. LCCS removed Ashley from the Shumans the day after she was born.
On January 20, 1998, the juvenile court magistrate held an adjudicatory hearing pursuant to R.C. 2151.35. At the adjudicatory hearing, the LCCS caseworker testified about the case plan in effect for Dylan and the Shumans' progress in achieving the plan. An early childhood intervention worker from the county board of mental retardation and developmental disability testified as to the services she provided to the family for Dylan and the couple's progress in developing parenting skills. The magistrate rendered a written decision on January 22, finding by clear and convincing evidence that Ashley was a dependent child, as defined by R.C. 2151.04(D)(1) and (2). Appellant filed objections to the magistrate's report. The court overruled the objections and adopted the magistrate's decision, with specific findings of dependency. The dispositional hearing took place on February 25 and March 5, 1998. Testimony was given by the guardian ad litem
for Ashley and Dylan, the early childhood education specialist, the LCCS caseworker, Mr. Shuman's probation officer, and two psychologists who treated Mr. and Mrs. Shuman. Mr. and Mrs. Shuman also testified. After hearing all the evidence, the court gave permanent custody of Ashley to LCCS by order dated March 11, 1998.
Appellant presents two assignments of error, which we will discuss in reverse order.
 II.
Second Assignment of Error:
 THE TRIAL COURT'S DECISION ADJUDICATING THE MINOR CHILD DEPENDANT (sic) WAS AGAINST THE WEIGHT OF THE EVIDENCE.
At the heart of hearings on the allocation of parental rights and responsibilities is the presumptive basic civil right of parents to have the care and custody of their own children. SeeStanley v. Illinois (1972), 405 U.S. 645, 651, 31 L.Ed.2d 551,558 and Santosky v. Kramer (1982), 455 U.S. 745, 753,71 L.Ed.2d 599, 606. Such a right may not be abrogated without due process. Thus, before parental rights can be terminated, Ohio's statutes require clear and convincing evidence that the child is an abused, neglected or dependent child and that it is in the child's best interests not to remain with the parents. The clear and convincing standard is such that the trier of fact, having seen all the evidence, has a firm belief or conviction as to the conclusion to be drawn. In re Adoption of Holcomb (1985),18 Ohio St.3d 361, 368.
Appellant avers that the trial court's adjudication of dependency is against the weight of the evidence. If the evidence is challenged on appeal, a reviewing court must determine if the trial court had before it sufficient evidence which, if believed, would justify the trial court's conclusion. See State v.Thompkins (1997), 78 Ohio St.3d 380. If the sufficiency requirement is met, the evidence may also be reviewed as to the weight that the trial court assigned to various evidentiary material. The weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." Black's Law Dictionary (6 Ed. 1990) 1594. If the weight of the evidence is found to justify the trial court's decision, the evidence must of necessity be legally sufficient. See State v. Roberts (Sept. 17, 1997), Lorain App. No. 96CA006462, unreported. However, a reviewing court may find that the evidence is sufficient, if believed, to support the trial court's decision, but that the decision was against the weight of the evidence.
An appellate court must afford great deference to the weight given by the trial court to the evidence and the credibility of witnesses. Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77,79-80. A reviewing court will not find that the trial court's decision was against the weight of the evidence unless, after reviewing all the evidence, it finds the trial court's decision is "clearly contrary to the manifest weight of the evidence." Bowenv. Bowen (Feb. 9, 1999), Medina App. Nos. 2720-M and 2733-M, unreported, at 24, citing Crull v. Maple Park Body Shop (1987),36 Ohio App.3d 153, 154.
Ohio Revised Code defines a dependent child as one
 Who is homeless or destitute or without adequate parental care, through no fault of the child's parents, guardian, or custodian;
 Who lacks adequate parental care by reason of the mental or physical condition of the child's parents, guardian, or custodian;
 Whose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship;
To whom both of the following apply:
 The child is residing in a household in which a parent, guardian, custodian, or other member of the household committed an act that was the basis for an adjudication that a sibling of the child or any other child who resides in the household is an abused, neglected, or dependent child.
 Because of the circumstances surrounding the abuse, neglect, or dependency of the sibling or other child and the other conditions in the household of the child, the child is in danger of being abused or neglected by that parent, guardian, custodian, or member of the household.
R.C. 2151.04. Appellant challenges the lower court's adjudication of Ashley as dependent because, she alleges, that finding was against the weight of the evidence. We disagree.
In its complaint for permanent custody of Ashley, LCCS alleged that Ashley was dependent under R.C. 2151.04(B), (C), and (D). At the magistrate's hearing, evidence was presented that Ashley's parents had been unable to successfully complete goals of a case plan developed for Ashley's older brother Dylan. In addition, the LCCS caseworker testified that Ray Shuman had been convicted of child endangering due to his abusive treatment of the couple's two oldest children. In her affidavit, the LCCS caseworker outlined the long history of the agency's involvement with the Shumans and stated that all three of the couple's other children had been removed from the home, two permanently. An early childhood education specialist testified that the parents were unsuccessful in mastering basic childcare skills in the seven months she had worked with them on Dylan's case plan. None of the evidence before the magistrate regarding the prior history of child endangering and the removal of three other children from the Shuman home was challenged at the magistrate's hearing.
Appellant filed objections to the magistrate's decision, and on February 25, the court made its own independent adjudication of dependency, finding Ashley to be a dependent child, as defined by R.C. 2151.04(C) and (D). At the time of the adjudication, appellant was (and presumably still is) married to Ashley's father, Ray Shuman. Ray had already been convicted of child endangering as to the couple's two oldest children, whose custody was permanently given to LCCS in 1996.[2] Neither appellant nor her husband was able to achieve the ability to independently parent their children, even with the educational and support services offered by LCCS and other agencies over a period of six years.
With such evidence before the trial court, we cannot say that the trial court's adjudication of Ashley as a dependent child pursuant to R.C. 2151.04(C) and (D) was against the manifest weight of the evidence. Appellant's second assignment of error is overruled.
 III.
First Assignment of Error:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT AND IN VIOLATION OF O.R.C. 2151.414 (SIC), THE FOURTEENTH AND NINTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 1 OF THE OHIO CONSTITUTION, WHEN IT TERMINATED THE PARENTAL RIGHTS OF APPELLANT AND GRANTED PERMANENT CUSTODY OF THE MINOR CHILD TO LORAIN COUNTY CHILDREN SERVICES, WHERE THE EVIDENCE FAILED TO SATISFY THE REQUISITE STANDARD OF PROOF.
Prior to the transfer of permanent custody from parents to a children services agency, the trial court must adhere to the procedures outlined in R.C. 2151.414. First, the court must find by clear and convincing evidence that it is in the best interests of the child for the agency to have permanent custody of the child. In determining the child's best interests, the court must consider all relevant factors, including, but not limited to, the following:
 The interaction and interrelationship of the child with the child's parents, siblings, * * * foster parents, * * * and any other person who may significantly affect the child;
 The wishes of the child, as expressed directly by the child or through the child's guardian ad litem * * *;
The custodial history of the child;
 The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.
R.C. 2151.414(D). In the instant case, the trial court made its findings of fact pursuant to the statutory requirements, based on the evidence before it. The uncontroverted evidence was that Ashley was in the same foster home as her brother, that both children were doing well there and that it was likely that the foster parents would adopt both children. The guardian ad litem, who had served in that capacity for all four children, strongly urged the court to give permanent custody of Ashley to LCCS, as she believed that appellant and her husband would never be able to care for Ashley adequately. Finally, there was no evidence that any other family member could have cared for Ashley, in lieu of a grant of permanent custody to LCCS. The evidence before the trial court was clear and convincing that it was in Ashley's best interests for permanent custody to be awarded to LCCS.
Once the best interests requirement is met, the court must still find, for a child who is not abandoned or orphaned, that "the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents." R.C. 2151.414(B)(1). The court, considering "all relevant evidence," must examine the record to see if any of twelve statutory conditions, listed in R.C. 2151.414(E) is present. If the court finds by clear and convincing evidence that any one (or more) of these conditions exists, the court must find that the child cannot or should not be placed with either parent.
In the case sub judice, there was evidence before the court that at least two of the statutory conditions existed. The first condition is described in R.C. 2151.414(E)(1):
 Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. * * *
At the hearing on permanent custody, the juvenile court heard testimony from the LCCS caseworker who had access to the LCCS files on the Shuman family dating back to 1991. This caseworker had worked with the family since 1995, before LCCS received permanent custody of the two oldest children. She outlined with great specificity the range of services provided to the Shumans, and the repeated failure of the couple to master even basic childcare skills, such as appropriately feeding infant Ashley her bottle. There was clear and convincing evidence before the court that appellant and her husband were unable to correct the deficiencies in their childcare skills which led to the termination of custody for their other three children.
Appellant asserts that R.C. 2151.414(E) must be strictly construed, because of the basic parental rights that are at stake.In re Cunningham (1979), 59 Ohio St.2d 100, 105. With that in mind, she looks only at her compliance with the newly revised case plan for Ashley, to see if R.C. 2151.414(E)(1) is implicated. She maintains that the various witnesses testified only that she was "inconsistent" in adhering to the case plan.
Appellant's argument fails for several reasons. First, her failure to remedy the problems addressed in the case plan was more than mere inconsistency. Appellant's failure to comply with the various case plans lasted for over six years, despite the fact that the agency offered a plethora of services to the family, and despite the (eventually realized) possibility that the couple would permanently lose custody of their children. During that time, a pattern developed, whereby appellant cooperated initially with a case plan for a few months, then failed to comply with it thereafter. Ray's probation officer stated that since December 1994, he had worked with Ray on the pertinent issues outlined in the case plan, including a job search and maintaining personal hygiene, but was about to terminate Ray's probation with these goals unmet because "there's nothing to really work with."
Appellant would like to look only at Ashley's case plan, which had been filed only shortly before the hearing on permanent custody. However, appellant's history of caring for her older children is relevant to a determination of custody for Ashley. There have been several revisions of R.C. 2151.414 since an appellate court wrote, "A juvenile court should not be forced to experiment with the health and safety of a newborn baby where the state can show, by clear and convincing evidence, that placing the child in such an environment would be threatening to the health and safety of that child." In re Campbell (1983), 13 Ohio App.3d 34,36. In fact, the legislature addressed this issue in its 1996 revision of R.C. 2151.414(E)(1), which was in effect at the time of the court hearing below. Previously the statute required a showing that "the parent has failed continuously and repeatedlyfor a period of six months or more to substantially remedy the [problematic] conditions * * * ." (Emphasis added.) Effective August 8, 1996, a court no longer has to find that the parent had failed for six months to correct the problems at issue. Evidence of a repeated failure to remedy is sufficient.
The second statutory condition present in the instant case is R.C. 2151.414(E)(6), which reads:
 The parent violated section * * * 2919.22
[Endangering children] * * * of the Revised Code and the child or a sibling of the child was a victim of the violation * * * and the parent who committed the violation poses an ongoing danger to the child or a sibling of the child.
Ray Shuman's probation officer testified that Ray had been on probation for over three years for his conviction of child endangering stemming from the abuse of the two oldest children. Furthermore, evidence was presented by Ray's therapist that Ray had anger management problems, and that he could not be left alone with a child without a risk that he would harm the child in anger or frustration. Ray himself testified that he was unable to say that he would be able to care for the child without hurting her. As corroboration, witnesses testified that at a joint visitation involving the parents, infant Ashley and her older brother Dylan, they saw Ray react to Dylan's crying by scolding the toddler and handing him off to one of the caseworkers. Ray was frustrated and unable to cope with the situation.
Appellant implicitly focuses only on her progress toward achieving her parenting goals. Despite the fact that appellant attempts to put distance between her failures and those of her husband, she offers no evidence either that his difficulties in parenting have been remedied or, in the alternative, that he would no longer reside in the home if Ashley was returned to appellant. As long as appellant is living with a person who has abused a child and who is likely to repeat such abuse, the conditions of R.C. 2151.414(E)(1) exist. And it may be said that she "has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home." R.C. 2151.414(E)(1).
R.C. 2151.414(E) requires the court to grant the agency permanent custody if even one of the statutory conditions exists.[3] In the case sub judice, there were two such conditions. Where the parent, even while under the watchful eye of the children services agency and the court, is unable to correct the problematic conditions in the household, the evidence is clear and convincing that the child should not be placed with the parent.
The trial court had clear and convincing evidence that it was in Ashley's best interests to have permanent custody given to LCCS, and that she could not be placed with her parents, pursuant to R.C. 2151.414(E). Therefore, appellant's first assignment of error is overruled.
Appellant's assignments of error having been overruled, the judgment of the trial court is affirmed.
Judgment affirmed.
 KK The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Lorain County Court of Common Pleas to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E).
SLABY, J.
CARR, J.
CONCUR
[1] Mr. and Mrs. Shuman were each represented by separate counsel in the case below. Mrs. Shuman is the sole appellant here.
[2] During the pendency of the action below, appellant and her husband permanently lost custody of their third child, Dylan, to LCCS after he was adjudicated a dependent child and efforts to reunite the family had failed.
[3] Although it is said that the version of R.C. 2151.414(E) in effect at the time of the hearing below had twelve statutory conditions which require the court to find the child cannot or should not be placed with the parents, only eleven conditions are stated with specificity. Section (E)(12) reads "Any other factor the court considers relevant." The latest revision of this section, effective March 18, 1999, includes the same provision at Section (E)(16). See In re Higby (1992),81 Ohio App.3d 466, 469 and In re William S. (1996), 75 Ohio St.3d 95,99. The latter opinion clarifies that this "catchall" provision does not allow the trial court to come up with its own "condition" mandating the allocation of permanent custody to the agency.