[Cite as *Downing v. Downing*, 2014-Ohio-4725.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
ERIE COUNTY

| | |
|---|---|
| Tiffany N. Downing | Court of Appeals No. E-13-050 |
| Appellee | Trial Court No. 2010-DR-0115 |
| v. | |
| Amos S. Downing, et al. | **DECISION AND JUDGMENT** |
| Appellant | Decided:  October 24, 2014 |

* * * * *

Tiffany Downing, pro se.

Michele A. Smith, for appellant.

* * * * *

**SINGER, J.**

{¶ 1} This is an appeal from the Erie County Court of Common Pleas, Domestic Relations Division, in which the trial court granted appellant, Amos Downing, and appellee, Tiffany Downing, a divorce from each other.  For the following reasons, we affirm.

**{¶ 2}** Appellant sets forth seven assignments of error:

I.  It was an abuse of discretion for the trial court to hold that the copies of credit card statements presented as evidence of marital debt, were not competent credible evidence to prove the existence of marital debt when the copies were stipulated to by the parties at the judge's insistence.

II.  It was an abuse of discretion for the trial court to find that the debt incurred by appellant's family, for the payment of marital expenses during the courts of the parties' marriage, was a "gift" rather than marital debt.

III.  It was an abuse of discretion for the trial court to fail to admit the summaries and pie charts as presented by appellant to evidence the appellee's income and then for the court to instead imputed (sic) minimum wage to the appellee for determination of child support and in determining the appellee's ability to pay various marital debts.

IV.  It was an abuse of discretion for the trial court to not hold a hearing upon the issuance of temporary orders within 28 days in accordance with civil rule 78(N)(2) and in not retroactively modifying the appellant's child support under temporary orders.

V.  It was an abuse of discretion for the court to not use correct figures and deductions in its child support calculation within the final divorce decision and in retroactively modifying temporary support orders.

VI. The trial court erred by failing to grant a deviation in child support to the appellant under both the temporary orders and post-divorce orders.

VII. The trial court judge exhibited a bias against the appellant based upon incorrect presumptions and by insinuating evidence that was not presented to the court.

{¶ 3} The parties were married in 2004. They are the parents of two minor children.

{¶ 4} In his first assignment of error, appellant contends that the court abused its discretion in finding that copies of credit card statements were not competent, credible evidence of the parties' marital debt.

{¶ 5} At a hearing, Erin G. Bartle, appellant's mother, testified that she loaned money to the parties, since 2004, through a credit card in her name with appellant as the secondary accountholder. At the court's urging, both counsel agreed to stipulate that defendant's exhibit A, a compilation of numerous documents, represented the amount of debt Bartle was claiming she was owed. The credit card statements at issue were included in defendant's exhibit A.

{¶ 6} In the judgment entry, the court refused to consider the credit card statements as evidence of marital debt because they were not true copies of the originals and did not include Bartle's name. Appellant contends that because the credit card

3.

statements were included in an agreed stipulation, the court was wrong to discount the statements as competent, credible evidence.

A stipulation is defined as a voluntary agreement, admission, or concession, made in a judicial proceeding by the parties or their attorneys concerning disposition of some relevant point so as to eliminate the need for proof or to narrow the range of issues to be litigated. *Vengrow v. Vengrow*, 9th Dist. Summit No. 24907, 2010-Ohio-2568, ¶ 10, quoting *Baum v. Baum*, 9th Dist. Wayne No. 97CA0022, 1997 WL 775770 (Nov. 26, 1997).

**{¶ 7}** Here, the parties merely stipulated to the amount of the alleged debt, not the debt's classification as marital. Following the stipulation, the debt's status remained the subject of the hearing. Significantly, upon accepting the stipulation, the court stated on the record:

Just so we're clear about this, the fact that she stipulates to the exhibit doesn't mean she stipulates to the fact that she owes it or that it's marital debt, it's just that they have paid this and it's subject to cross-examination. Are we clear about that?

**{¶ 8}** A trial court's allocation of marital debt will not be reversed absent an abuse of discretion. *Elliott v. Elliot*, 4th Dist. Ross No. 05CA2823, 2005-Ohio-5405, ¶ 17. A trial court does not abuse its discretion when there is some competent, credible evidence

4.

to support its decision. *Smith v. Smith*, 4th Dist. Butler No. CA2001-10-251, 2002-Ohio-4232, ¶ 7.

{¶ 9} Following the stipulation, it remained the court's role to determine whether or not the evidence submitted supported appellant's claim. Upon review of the trial court record, we do not find that the court erred in exercising its discretion. Appellant's first assignment of error is found not well-taken.

{¶ 10} In his second assignment of error, appellant contends that the court erred in determining that the debt incurred by appellant's family for payment of the parties' marital expenses was a gift.

{¶ 11} The classification of property as a loan or a gift is a factual determination and is reviewed by this court under a manifest weight standard of review. *Johnson v. Johnson*, 12th Dist. Warren No. CA99-01-001, 1999 WL 760978, *4 (Sept. 27, 1999); *Bertsch v. Bertsch*, 9th Dist. Wayne No. 97CA0009, 1997 WL 760951, *1 (Nov. 19, 1997). The factual findings accompanying the trial court's classification of property as marital or separate "are reviewed to determine whether they are supported by competent, credible evidence." *Johnson* at *4; *see also Crull v. Maple Park Body Shop*, 36 Ohio App.3d 153, 154, 521 N.E.2d 1099 (12th Dist.1987). If the judgment of the lower court is supported by some competent, credible evidence going to all the essential elements of the case, it will not be reversed by a reviewing court as being against the weight of the evidence. *Seasons Coal Co., Inc. v. City of Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984).

5.

{¶ 12} Bartle testified that she loaned the parties money in the form of credit card purchases and cash. The credit card was in her name with appellant listed as a secondary accountholder. She had a verbal agreement with the parties that they were to pay her back when they received their tax refund check. She testified that she has expected payment for eight years, although she never verbally demanded repayment or instituted a legal action against the parties for repayment until the divorce was filed.

{¶ 13} Appellant's grandmother, Wilma Davidson, testified that during the parties' marriage she wrote checks to cover some of their expenses such as a tax bills, automobile insurance and mortgage payments. As with Bartle, Davidson testified that the parties had a verbal agreement to pay her back from their tax refund check each year. Counsel introduced defendant's exhibit D which was a document dated January 6, 2008, and signed by the parties stating that they agreed to deposit their 2008 tax refund check into Davidson's account. Davidson testified that she had the parties sign the document after she had loaned them money for over three years without repayment. In 2010, appellant wrote a check to Davidson in the amount of $2,000 from their 2008 refund check. She also testified that she never spoke to appellee about paying her back because she "didn't want to bother her."

{¶ 14} Appellant testified that Bartle and Davidson never told him that the money loaned to him and appellee over the years was a gift as opposed to a loan.

{¶ 15} In finding that there was no competent, credible evidence that there was marital debt owed to Bartle, the court noted that there is no written evidence that the

6.

parties promised to pay her back. Although the money was distributed from 2005 to 2008, Bartle never initiated a claim or legal action against the parties. The court also noted that even though Bartle prepared the parties' tax returns during this time and was aware of the amount of their refunds, appellant never repaid his mother. Moreover, appellant never listed Bartle as a creditor on his court financial disclosure form.

{¶ 16} In finding that there was no competent, credible evidence that there was marital debt owed to Davidson, the court acknowledged that appellant did list Davidson as a creditor on his financial disclosure form. The majority of the money was for home improvements, mortgage payments, utility bills and car repairs. When asked about this money, Davidson stated "I wanted to help them." The court found it significant that among the many times Davidson had distributed money to the parties, she only once executed a document in writing for repayment, and payment that was received. She never initiated a claim or legal action for the remaining money she had distributed to them.

{¶ 17} If the evidence presented to the trial court is susceptible to more than one interpretation, we are bound to give it the construction that is consistent with the trial court's judgment and finding of facts. *Jones v. Holmes*, 12th Dist. Butler No. CA2012-07-133, 2013-Ohio-448, ¶ 24. The underlying rationale of this deferential standard rests with the understanding that "the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co.*, 10 Ohio St.3d 77 at 80.

7.

{¶ 18} Here, the court considered many factors in finding there was no marital debt. Ultimately, the court found the witnesses' contention that, the money at issue was intended to be a loan, to be at odds with their actual behavior over the course of the approximate eight-year marriage. Such a credibility determination will not be disturbed by this court.

{¶ 19} Appellant contends that the court erred in referencing, in her decision, statements supposedly made by appellee regarding the money. Appellant contends this was error because appellee never testified at the hearing. We find this argument to be without merit. Error, if any, would be harmless as the court's decision is adequately supported by the testimony of Bartle, Davidson and appellant. Simply put, the court did not find them to be credible. Appellant's second assignment of error is found not well-taken.

{¶ 20} The record shows that appellee works approximately 30 hours a week, at $6.50 an hour, as a bartender at a local AMVETS Post. In his third assignment of error, appellant contends that the court erred in failing to admit certain exhibits to support his position that appellee underreported her income for purposes of calculating child support. Appellant contends that in failing to admit the exhibits, the court could not include the amount of tips appellee has received while working as a bartender. Tips that appellee herself admitted she sometimes did not report.

{¶ 21} A hearing to determine child support was held before a magistrate on May 25, 2011. Appellant's counsel called Amanda Dendinger to the stand for purposes

8.

of reviewing appellee's bank statements. Dendinger testified that she is a paralegal with the law firm of Murray and Murray in Sandusky, Ohio. Before she could continue her testimony, appellee's counsel objected to her as a witness. Counsel argued that she was not a competent witness because a paralegal is not necessarily trained in banking matters and because Dendinger is employed by the same law firm that employs appellant's stepfather. The magistrate overruled the objection stating "[L]ets give her an opportunity to testify and see exactly what we are talking about."

{¶ 22} Dendinger testified that as part of her duties at the firm, she creates spreadsheets, graphs and charts based on data entry she has obtained from reviewing case records. Upon reviewing appellees' bank statements from 2009 to 2011, Dendinger created summaries and pie charts in an effort to decipher the sources of appellee's bank deposits. On the basis of the best evidence rule, appellee's counsel objected to the documents being admitted into evidence because the original bank statements were already before the court. The magistrate took the objection under advisement but never officially ruled on the objection. Consequently, appellant raised this issue in his objections to the magistrate's decision.

{¶ 23} It is well settled that the admission or exclusion of relevant evidence rests within the sound discretion of the trial court. *State v. Sage*, 31 Ohio St.3d 173, 180, 510 N.E.2d 343 (1987). "Thus, we only reverse for an abuse of discretion, which is characterized by a ruling that lacks a sound reasoning process." *Bigler v. Personal Serv.*

9.

*Ins. Co.,* 7th Dist. Belmont No. 12 BE 10, 2014-Ohio-1467, ¶ 76, citing *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 14.

{¶ 24} The court, in the final decision, sustained the objection stating:

> The bank records are the best evidence of plaintiff's deposits, and if indicated on the account, the source of deposits. Where miscellaneous deposits were made, [appellant's] speculation as to their origins is not proof.

{¶ 25} The "best evidence rule" rests on the fact that an original writing is more reliable, complete, and accurate as to its contents and meaning. *United States v. Holton,* 116 F.3d 1536, 1545 (D.C.Cir.1997).

{¶ 26} Even though appellee admitted that she did not always report her tips, the self -serving exhibits prepared by appellant offered no proof of any amount appellee may have failed to report. Because the court already had the bank records, we find no abuse of discretion in the court's decision to exclude the exhibits. Appellant's third assignment of error is found not well-taken.

{¶ 27} In appellant's fourth assignment of error, appellant contends that the court abused its discretion in failing to hold a hearing on appellant's motions to modify the court's temporary orders.

{¶ 28} Civ.R. 75(N)(2) provides that a party requesting a modification of a temporary support order shall be granted an oral hearing within twenty-eight days.

10.

**{¶ 29}** On the same day appellee filed for divorce, she filed a motion for temporary orders of custody and spousal and child support. On August 6, 2010, the court issued the temporary orders. Appellant filed a motion seeking modification of the orders and asked for a hearing. On August 20, 2010, the court issued a judgment entry stating: "[U]pon consideration and for good cause shown it is hereby ORDERED, ADJUDGED, and DECREED that an (sic) Pretrial Hearing on the Temporary Orders will be heard on: September 8, 2010 at 8:30 a.m."

**{¶ 30}** It is unclear from the record before us whether the September 8 hearing ever took place. However, on September 10, 2010, the court issued a notice for an "evidentiary hearing on temporary orders" to be held on October 29, 2010.

**{¶ 31}** There is no evidence in this record that an October hearing was ever held until appellant, in December, filed a "motion for an emergency hearing concerning the temporary orders." In this motion, appellant argued that it was his understanding that an agreement had been reached to modify child support but appellee had chosen to dishonor the agreement. With his motion, appellant attached a "consent judgment entry/temporary reduction of child support order." The order states that the matter came before the court on October 29 and that the parties had reached an agreement regarding a reduction in child support to reflect the fact that appellant would be off work for eight weeks due to back surgery. This "consent judgment entry" is signed by appellant's counsel. It is not signed by the magistrate, the judge, or by appellee's counsel. Appellant also attached a letter from appellee's counsel stating she would not sign the proposed consent judgment

11.

entry because she had not received proof of appellant's reduced income. The court scheduled the matter for a hearing on January 12, 2011. It appears from the record that no such hearing took place.

{¶ 32} On February 2, 2011, appellant filed a "motion for hearing on temporary orders to be held on February 7, 2011." Appellant sought a hearing on his December motion for an emergency hearing. The court granted the motion. There is no evidence in the record that a hearing took place on February 7.

{¶ 33} The parties' final divorce hearing was scheduled for April 12, 2011. On March 18, 2011, appellant filed a motion asking the court to convert the final divorce hearing into a hearing on the temporary orders. In the motion, appellant referenced a tentative agreement that had been reached regarding modified child support. Appellant alleged that the parties had not followed through on the agreement because appellee refused to accurately report her income. The court denied the motion.

{¶ 34} Appellant is correct that the court is required to hold a hearing within 28 days of his motion to modify the temporary orders. The court timely scheduled a hearing the first time appellant filed such a motion. In fact, the court scheduled a total of four hearings for the purpose of addressing appellant's modification requests. From the record, it is evident that during this time, the parties were attempting to unsuccessfully negotiate a resolution and when the negotiations failed, appellant would once again request a hearing. It is clear from the record that the court never ignored appellant's request for a hearing. Most importantly for purposes of this assignment of error, hearings

12.

on the temporary orders were ultimately held on May 25 and July 18, 2011. Appellant's fourth assignment of error is found not well-taken.

{¶ 35} In his fifth assignment of error, appellant contends that the court relied on incorrect figures in calculating child support. A trial court's calculation of child support is reviewed for an abuse of discretion. *Dunbar v. Dunbar*, 68 Ohio St.3d 369, 371, 627 N.E.2d 532 (1994). A trial court in a domestic relations case "must have discretion to do what is equitable upon the facts and circumstances of each case," including on issues of child support. *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989).

## 1. Retroactive Application of Temporary Order

{¶ 36} Appellant initially contends that the temporary order failed to show the correct income for appellee. As discussed earlier, the court used appellee's bank records as proof of income which we have already determined to be adequate.

{¶ 37} Appellant argues that the temporary support order was based on other incorrect figures. In the judgment entry, the judge specifically addressed this issue and acknowledged problems with the temporary order.

> [T]he magistrate deducted spousal support of $1800 from [appellant's] income, deducted local taxes from the defendant's income of $409 although he does not incur local tax, failed to deduct uniform expense of $296, failed to reduce [appellant's] health insurance cost solely for the two children to $2,299, and determined his income to be $40,905.

13.

{¶ 38} As the court agreed with appellant that the temporary order was flawed, he now contends that the court should have retroactively modified his child support. The court expressly declined to do so and gave the following explanation:

> [I]t is unreasonable, unjust, and not in the best interest of [the children] to retroactively apply the modification of the child support to June of 2010 when a hearing was held December 10, 2012, given the following. The compelling evidence provided by [appellant's] employer is that [appellant] is voluntarily underemployed, excluding vacation, holiday and medical leave. [Appellant's] earnings, if he worked as scheduled by his employer, would produce a greater child support award that the court is ordering. The court finds it more equitable to set the final trial date of December 10, 2012, as the date for modification of child support than to impute earnings to appellant.

{¶ 39} When computing child support, the trial court must evaluate the income of each of the parents. *Drummer v. Drummer*, 3d Dist. Putnam No. 12-11-10, 2012-Ohio-3064, ¶ 24. While reviewing the parties' income, the trial court may determine that a party is voluntarily underemployed. *Id.* If the trial court makes such a finding, the trial court must consider the party's potential income, "which is income the parent would have earned if he or she had been fully employed." *Id.*, citing R.C. 3119.01(C)(5)(b), and (11)(a). In imputing the potential income the trial court must review multiple factors, as mandated by R.C. 3119.01(C)(11)(a):

14.

(i) The parent's prior employment experience;

(ii) The parent's education;

(iii) The parent's physical and mental disabilities, if any;

(iv) The availability of employment in the geographic area in which the parent resides;

(v) The prevailing wage and salary levels in the geographic area in which the parent resides;

(vi) The parent's special skills and training;

(vii) Whether there is evidence that the parent has the ability to earn the imputed income;

(viii) The age and special needs of the child for whom child support is being calculated under this section;

(ix) The parent's increased earning capacity because of experience;

(x) The parent's decreased earning capacity because of a felony conviction;

(xi) Any other relevant factor.

{¶ 40} Appellant is employed hourly as a machinist at Alco Manufacturing. An employee testified that the companies' policies are lenient with regards to attendance. The company's records show that appellant has missed a significant amount of work between 2009 and the beginning of 2011. Citing the first quarter of 2011, the court noted that appellant had missed 16 days of work. This amounted to a loss of approximately

15.

$2,000 ($16.50 an hour, eight hours a day). Previous testimony had established that appellant lives in a house owned by his mother rent free and that his family generously helps him pay his bills. The court stated:

> [Appellant] has the ability to fail to appear for work when scheduled without consequences from his employer. [Appellant] has the ability to be supported by his family when, perhaps due to his reduced earnings, he is unable to pay for his expenses. Unfortunately, his reducing his work hours, etc., and reduction in earnings impact his children's standard of living by reducing the amount of child support they receive.

{¶ 41} Based on the evidence before the court, we find that the court did not abuse its discretion in failing to retroactively modify appellant's child support.

## 2. Shared Parenting Setoff

{¶ 42} Appellant contends that because the parties had entered into a shared parenting agreement, they were entitled to an offset in their child support obligations. However, "the General Assembly has not provided for such a calculation, and instead, the statute provides the court may make a case by case analysis and adjust the support order, always guided by the best interest of the child." *Laubacher v. Laubacher*, 5th Dist. Stark No. 2009CA00279, 2010-Ohio-5335, ¶ 13. Accordingly, the court did not err in not failing to automatically set off their child support obligations because of the existence of a shared parenting agreement.

16.

### 3. Child Care

{¶ 43} Appellant contends that the court erred in crediting appellee with the amount of $4,800 in child care on the child support worksheet because appellee never provided any receipts to prove the amount. The court derived the figure from the parties' joint federal tax return as well as each of their court financial disclosure forms filed with the court. We find this to be competent, credible evidence of appellee's child care costs.

{¶ 44} Appellant also contends that the court erred in failing to label the child care expenses as "qualified" as opposed "total child care expenses." Appellant did not raise this issue below, as such, it is waived.

{¶ 45} We have thoroughly reviewed the lengthy record, including the detailed judgment entry at issue in this case and find that the court's determinations with regard to temporary and final child support to be well reasoned and supported by competent, credible evidence. Appellant's fifth assignment of error is found well-taken.

{¶ 46} In appellant's sixth assignment of error, he contends that the court should have granted him a deviation in child support because of the costs he incurs to provide health insurance for the children, the expense of maintaining adequate housing for the children and the fact that he has the children an additional 28 days per year beyond a standard visitation order.

{¶ 47} In denying appellant's request for a deviation, the court once again noted that appellant lives in a house rent and mortgage free. The court pointed out that when the children are visiting him, they spend a great deal of time with their paternal

17.

grandparents rather than with appellant. The paternal grandparents generously attend to the children's needs. The court stated:

> There is no equitable reason for deviation of the child support for the temporary or final order given the significant difference in affordable lifestyles between the parties * * * It is not in the children's best interest to further reduce their standard of living in their mother's care which is at a subsistence level when they enjoy a significantly higher standard of living when the father is entitled to possession. The amount of child support is not inappropriate, not unjust, not unreasonable, and is in the children's best interest not to deviate.

**{¶ 48}** We find no abuse of discretion in the trial court's determination of this issue. Appellant's sixth assignment of error is found not well-taken.

**{¶ 49}** In appellant's seventh assignment of error, appellant contends that the trial judge exhibited an unwarranted bias against him. Interestingly, the original trial judge in this case recused himself after the parties accused him of being biased.

**{¶ 50}** We have carefully reviewed the record in this case as well as appellant's alleged "examples" of the trial court's bias against him. Merely ruling in favor of the opposite party in trial matters does not amount to "unwarranted bias" against the other party. We find no basis to conclude that the trial judge was biased against appellant. Appellant's seventh assignment of error is found not well-taken.

18.

**{¶ 51}** On consideration whereof, we find that substantial justice was done the party complaining and the judgment of the Erie County Court of Common Pleas, Domestic Relations Division, is affirmed. Pursuant to App.R. 24, appellant is ordered to pay the costs of this appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.          _____
                                                          JUDGE
Arlene Singer, J.          

Stephen A. Yarbrough, P.J.          _____
CONCUR.                                                 JUDGE

                                          _____
                                                          JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.sconet.state.oh.us/rod/newpdf/?source=6.